IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KURT THOMPSON, | : | No. 4:06-cv-00518 |
| | : | |
| Plaintiff, | : | (Judge McClure) |
| | : | |
| v. | : | |
| | : | |
| MARK LEHMAN, Mayor of Jersey | : | |
| Shore, ANDREW LYON, Jersey | : | |
| Shore Borough Council Member, and | : | |
| CHERYL BRUNGARD, Jersey | : | |
| Shore Borough Council President, | : | |
| | : | |
| Defendants. | : | |

**M E M O R A N D U M**

September 10, 2007

**BACKGROUND:**

On March 10, 2006, plaintiff Kurt Thompson initiated this civil rights action

pursuant to 42 U.S.C. § 1983 by filing a complaint against defendants Mark

Lehman, Andrew Lyon, and Cheryl Brungard.  Lehman is the Mayor of Jersey

Shore Borough, Pennsylvania, Lyon is a Borough Council Member, and Brungard

is the Borough Council President.  Plaintiff alleges that defendants deprived him of

his First Amendment right to free speech.  Plaintiff also alleges that defendants

retaliated against him for engaging in protected speech.

On July 23, 2007, defendants filed a motion for summary judgment.  (Rec.

Doc. No. 25.)  On August 13, 2007, plaintiff filed an opposing brief.  (Rec. Doc.

No. 31.)  No reply brief has been filed and the time for doing so has since passed.

Now, for the following reasons, we will grant in part and deny in part the motion.

**STATEMENT OF FACTS:**

Plaintiff Kurt Thompson is a resident of Jersey Shore, Pennsylvania and an

outspoken critic of the local government.  On December 30, 2005, plaintiff went to

the Jersey Shore borough building.  He testified at his deposition that he went there

to attend a presentation by a state representative of grant money for the

community.  (Dep. of Kurt Thompson, Rec. Doc. No. 28-2, at 55.)  At some point

while he was at the building, plaintiff went to an office where defendants Lehman

and Lyon were located to discuss a personal disagreement plaintiff and defendant

Lehman had had earlier that day.  (Id. at 56-57.)  Plaintiff knocked on the door and

defendants Lehman and Lyon refused to allow plaintiff to enter.  (Id. at 57.)  When

plaintiff began talking through the door about the disagreement, defendant Lyon

removed plaintiff from the building.  (Id.)  After the incident, plaintiff was able to

return to the building in time for the presentation.  (Id. at 60, 75, 78.)

On January 23, 2006, plaintiff attended a public borough council meeting.

(Id. at 83.)  During the meeting, he voiced his concerns about the borough's

2

expenditure of public funds.  (Id.)  He testified that he voiced this opinion without being recognized, but that this is how other members of the public were making statements at this particular meeting.  (Id. at 90.)  Furthermore, plaintiff testified that during the meeting, he had several side conversations with members of the audience, but that these conversations were not loud enough for others to hear.  (Id. at 87.)  At some point during the meeting, plaintiff went outside to smoke a cigarette.  (Id. at 92.)  While outside, Police Chief Martin Jeirles told plaintiff that he was not permitted to return to the meeting and to accompany him to the police station.  (Id. at 92.)  Jeirles testified that he was told by the mayor (defendant Lehman) that the borough council president (defendant Brungard) wanted plaintiff removed from the meeting and arrested.  (Dep. of Martin Jeirles, Rec. Doc. No. 28-9, at 12.)

On August 4, 2006, defendant Lehman presented Police Chief Jeirles with a "procedural addition" which stated that officers of the police department were required to remove individuals from public borough council meetings after the borough council president "gavels out" an individual for a second time.  (Id. at 19; Dep. of Mark Lehman, Rec. Doc. No. 28-8, at 30-32.)  This "procedural addition" did not provide any direction as to when an individual is to be "gavel[ed] out." (Dep. of Martin Jeirles, Rec. Doc. No. 28-9, at 19.)  Furthermore, Jeirles testified

that the reason defendant Lehman passed this procedural addition was because he was tired of plaintiff's continuing to speak after the council president hits her gavel.  (<u>Id.</u> at 24.)

On October 23, 2006, plaintiff attended another public borough council meeting.  (Dep. of Kurt Thompson, Rec. Doc. No. 28-2, at 140.)  Plaintiff testified that he was given the floor and spoke critically to the treasurer regarding the borough's budget.  (<u>Id.</u>)  At some point, defendant Brungard gaveled down plaintiff and told him that he had to speak directly because she was the council president.  (<u>Id.</u> at 141.)  Plaintiff testified that at this point, defendant Lyon made a "snide remark" along the lines of shut up and sit down.  (<u>Id.</u>)  Plaintiff responded by informing defendant Lyon that he was out of order and then asked defendant Brungard to get her council people under control.  Defendant Brungard again gaveled down plaintiff and informed plaintiff that he must direct his questions to her.  (<u>Id.</u>)  Plaintiff then resumed questioning the treasurer and defendant Brungard permitted him to proceed in this manner, at one point informing plaintiff that he had two minutes left to speak.  (<u>Id.</u> at 141-42.)  While plaintiff was finishing up these last two minutes, defendant Lehman ordered the chief of police to remove plaintiff from the meeting because he had violated his written directive by being gaveled down twice.  (<u>Id.</u>; Deposition of Martin Jeirles, Rec. Doc. No. 28-9, at 25-

4

27.)  The chief of police then removed plaintiff from the meeting while he was still

speaking.  (Dep. of Kurt Thompson, Rec. Doc. No. 28-2, at 142-43.)

There is also evidence that during another public borough council meeting,

defendant Lyon told plaintiff, who has back problems, to stand up when plaintiff

was already standing.  (Id. at 121.)  Defendant Lyon testified that the purpose of

this statement was to draw attention to the fact that plaintiff was being disruptive

and also to inject some humor into an uncomfortable situation.  (Dep. of Andrew

Lyon, Rec. Doc. No. 28-4, at 27-28.)  Similarly, plaintiff testified that defendant

Lehman once called him a "liar" at a public meeting.  (Dep. of Kurt Thompson,

Rec. Doc. No. 28-2, at 122.)  Finally, plaintiff's wife, who worked for the borough,

testified that she was informed by two borough employees that defendant Lyon

went to their houses asking them to fire her.  (Dep. of Karen Thompson, Rec. Doc.

No. 28-5, at 71-72.)


**DISCUSSION:**

## I.  Legal Standard

A district court may properly grant a motion for summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930

F.2d 1056, 1061 (3d Cir. 1991).

To the contrary, when the moving party bears the burden of persuasion at trial, it must point to evidence in the record that supports its version of all material facts and demonstrate an absence of material facts.  National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992).  If the moving party does not meet this burden, the court must deny summary judgment even if the nonmoving party does not produce any opposing evidence.  Id.

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains.  Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact.  Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II.  Analysis

Plaintiff has brought a claim under 42 U.S.C. § 1983.  In order for plaintiff to prevail under 42 U.S.C. § 1983 he must establish two elements: 1) that the conduct complained of was committed by a person acting under color of state law

and 2) that the conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).  Plaintiff alleges that the defendants deprived him of his First Amendment right to free speech.  Plaintiff also alleges that defendants retaliated against him for engaging in protected speech.

A.  Deprivation of First Amendment Right to Free Speech

For a right to speak claim, a plaintiff must prove that: 1) the speech was protected by the First Amendment and 2) that the government excluded plaintiff's speech in a public or non-public forum without justifying its actions to the standard required for the particular forum.  Graw v. Fantasky, 68 Fed. Appx 378, 381 (3d Cir. 2003) (citation omitted).

The first topic we must address is the different types of forums and the appropriate standards for each forum.  A traditional public forum is a place that by long tradition has been devoted to assembly and debate, such as a street or park.  Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998).  A designated public forum is a place that the government has opened for use by the public for assembly and speech, for use by certain speakers, and for the discussion of certain subjects.  Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 802 (1985).  Time, place, and manner restrictions are

8

permissible in a traditional or designated public forum if the restrictions are be

content-neutral, narrowly-tailored to serve a significant governmental interest, and

leave open alternative channels for communication of the information.  Zapach v.

Dismuke, 134 F. Supp. 2d 682, 690 (E.D.Pa. 2001) (Van Antwerpen, J.) (citing

Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  Content-based

restrictions must pass strict scrutiny, and therefore must be narrowly-tailored to

serve a compelling state interest.  Id. (citing Perry Educ. Ass'n v. Perry Local

Educators' Ass'n, 460 U.S. 37, 46 (1983).  Finally, viewpoint-based restrictions are

not permitted under any circumstances.  See Perry, 460 U.S. at 62-63.

A non-public forum is public property which the government has not opened

for assembly and speech by tradition or designation.  Perry Educ. Ass'n v. Perry

Local Educators' Ass'n, 460 U.S. 37, 46 (1983).  The government can restrict

speech in a non-public forum as long as the restrictions are reasonable and

viewpoint-neutral.  Cornelius, 473 U.S. at 800.

A number of courts have held that a designated public forum exists when a

governmental body affords the public an opportunity to address the body at its

meeting.  Zapach v. Dismuke, 134 F. Supp. 2d 682, 689 (E.D.Pa. 2001) (Van

Antwerpen, J.) (citations omitted).  Therefore, as for the borough meetings that

were held on January 23, 2006 and October 23, 2006, a designated public forum

9

existed because it appears that the meetings were open to the public and individuals attending were given an opportunity to speak at the meeting.

Defendants argue that with respect to the January 23, 2006 meeting, although defendant Brungard did seek to remove plaintiff from the meeting, plaintiff left the meeting voluntarily and "therefore was not engaged in protected activity." (Rec. Doc. No. 26, at 17.)  There is simply no evidence in the record to support this contention.  Rather, the deposition testimony of both the police chief and plaintiff shows that defendant Brungard sought to have plaintiff removed and succeeded when the police chief did not permit plaintiff to return to the meeting.

Defendants also argue, in an attempt to justify the removal, that plaintiff spoke at this meeting without being recognized and also held side conversations with audience members during the meeting.  Yet, plaintiff's deposition testimony contradicts such a contention and creates a disputed material fact as to this issue. Plaintiff testified that other members of the audience were speaking without being recognized and that his side conversations were not loud enough to be heard by others.  In other words, plaintiff's testimony implies that he was not removed because of the side conversations or because he was speaking without being recognized.  If this is the case, it would appear that defendants' justification is pretextual and that plaintiff was actually removed because defendants did not like

what he had to say, which would constitute impermissible viewpoint discrimination.

With respect to the October 23, 2006 meeting, defendants argue that plaintiff was disruptive and refused to confine his remarks to the council president and his removal was therefore justified.  (Rec. Doc. No. 26, at 19-20.)  Additionally, defendants argue that plaintiff violated defendant Lehman's written directive by being gaveled down twice and that this justifies removal.

First, we have serious issues with defendant Lehman's written directive which permits removal after being gaveled down twice, without any guidelines as to when the gavel is to be employed.  In other words, it gives the holder of the gavel unfettered discretion as to when an individual is to be removed. Additionally, Police Chief Jierles testified that defendant Lehman told him the reason the directive was passed was that he was tired of plaintiff's speaking after the borough council president hits her gavel, which also raises issues that defendant Lehman was singling out plaintiff.  Second, plaintiff's deposition testimony states that he was permitted to continue questioning the treasurer and was informed by defendant Brungard that he had two minutes to finish his questioning, and then he was removed by the police chief at the direction of defendant Lehman before the two minutes expired.  Again, the implicaton from

plaintiff's testimony is that the defendants' justification are pretextual and that defendant Lehman had him removed because he did not like what plaintiff was saying to the treasurer, which is impermissible viewpoint discrimination.

Finally, with respect to the October 30, 2005 incident at the borough building, we agree with defendants that summary judgment is appropriate on this claim. First, we find it important that plaintiff approached defendant Lehman in the building to discuss a personal issue, which is quite different from speech on a matter of public concern. Second, plaintiff approached defendant Lehman while Lehman was behind the closed door of an office. Although it appears that certain parts of the building are occasionally opened up for speech and assembly (like the presentation of the grant money that was going to occur), we do not find that a public forum existed with respect to the particular office in which plaintiff attempted to confront defendant Lehman. Third, it appears that plaintiff was being disruptive because he was speaking through the door into a room in which defendants Lehman and Lyon were presumably trying to hold a private conversation. Finally, it is important to note that although plaintiff did have a right to attend the presentation of the grant money, plaintiff was able to return in time for the beginning of the presentation. Therefore, we find that summary judgment is appropriate with respect to this claim.

12

B.  Retaliation for the Exercise of First Amendment Rights

As mentioned above, plaintiff claims that defendants retaliated against him for the exercise of free speech by telling plaintiff to stand at a meeting when plaintiff was already standing, by calling plaintiff a liar, and by trying to get plaintiff's wife fired.  For a First Amendment retaliation claim, plaintiff must show that: 1) the plaintiff engaged in protected activity; 2) the government responded with retaliation; and 3) the protected activity was the cause of the retaliation. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003).  Yet, courts have generally required that the alleged retaliatory acts be more than de minimus or trivial.  Brennan v. Norton, 350 F.3d 419 (3d Cir. 2003) (quoting Suarez Corp. Industries v. McGraw, 202 F.3d 676, 686 (4th Cir.2000)).  At the same time, however, a plaintiff may be able to establish liability for retaliation when the evidence is viewed as a whole, even if some or all of the conduct complained of would be de minimus if viewed in isolation.  Id. at 419 n. 16.

Defendants' only argument that summary judgment is appropriate on the retaliation claim is that the alleged retaliatory acts fail to rise to the level necessary to establish liability.  (Rec. Doc. No. 26, at 22.)  We would agree that the retaliation was only de minimus if the record included only the two instances of verbal abuse.  Yet, when the allegation is that government officials attempted to

have the wife of an outspoken critic of the government fired, this goes well beyond

<u>de</u> <u>minimus</u> retaliation, even if they are ultimately unsuccessful in their attempt.

Therefore, we will deny summary judgment on this issue, even with respect to the

<u>de</u> <u>minimus</u> claims of retaliation.

## C.  Qualified Immunity

Defendants also argue that they are entitled to qualified immunity and that

this entitled them to a grant of summary judgment.  A defendant has the burden of

establishing that he or she is entitled to qualified immunity.  <u>Kopec v. Tate</u>, 361

F.3d 772, 776 (3d Cir. 2004).  We utilize a two-step inquiry when ruling on the

issue of qualified immunity.  <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001).  "First,

the court must consider whether the facts alleged, taken in the light most favorable

to the plaintiff, show that the officer's conduct violated a constitutional right."  <u>Id.</u>

at 201.  If "a violation could be made out on a favorable view of the parties'

submissions, the next sequential step is to ask whether the right was clearly

established."  <u>Id.</u>  "The relevant dispositive inquiry in making this determination is

whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted."  <u>Kopec</u>, 361 F.3d at 776 (quoting <u>Saucier</u>, 533 U.S. at

201).

We find summary judgment to be inappropriate on this issue.  The Supreme

14

Court has stated that if the law is firmly established, the qualified immunity

defense should normally fail because a reasonably competent official should know

the law governing his conduct.  Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).

If plaintiff was removed from public meetings because of his viewpoint and if he

was retaliated against because of the exercise of his First Amendment Rights, a

qualified immunity defense must fail because the law is firmly established on these

issues.  In other words, there is simply no possibility that a competent government

official could believe that he or she can remove an individual from a public

meeting because of his or her viewpoint, or retaliate for the exercise of free speech.

Furthermore, there is evidence in the record that the chief of police warned

defendants Brungard and Lehman that the removal of individuals from public

meetings for any reason other than criminal conduct could constitute a First

Amendment violation.  (Dep. of Martin Jeirles, Rec. Doc. No. 28-9, at 17-18.)

This evidence also weighs in favor of denying any defense of qualified immunity.

Therefore, we will deny summary judgment on this issue as well.


**CONCLUSION:**

     For the reasons stated above, we find that summary judgment must be

denied as to all plaintiff's claims except for plaintiff's claim arising from the

15

December 30, 2005 removal from the borough building.  Additionally, summary

judgment is denied with respect to defendants' qualified immunity defense.


　　　　　　　　　　　　  s/ James F. McClure, Jr.
　　　　　　　　　　　　James F. McClure, Jr.
　　　　　　　　　　　　United States District Judge


IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


16

KURT THOMPSON,    :  No. 4:06-cv-00518
            :
    Plaintiff,   :  (Judge McClure)
            :
  v.         :
            :
MARK LEHMAN, Mayor of Jersey :
Shore, ANDREW LYON, Jersey  :
Shore Borough Council Member, and :
CHERYL BRUNGARD, Jersey  :
Shore Borough Council President, :
            :
    Defendants.  :

# O R D E R

September 10, 2007

In accordance with the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment is denied in part and granted in part.  (Rec. Doc. No. 25.)

2. Defendants' motion for summary judgment is granted as to plaintiff's claims arising out of the December 30, 2005 incident.

3.      Defendants' motion for summary judgment is otherwise denied.




                          s/ James F. McClure, Jr.
                          James F. McClure, Jr.
                          United States District Judge